J-S43037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAHEED O. SAUNDERS | : | |
| | : | |
| Appellant | : | No. 497 EDA 2024 |

Appeal from the PCRA Order Entered February 2, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009795-2008

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED FEBRUARY 06, 2025**

Saheed O. Saunders appeals from the order denying his serial petition
filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A §§
9541-46. We affirm.

In a previous appeal, this Court summarized the pertinent facts as
follows:

> On January 18, 2008, at approximately 8:00 p.m., Saunders
> and two other men [(later identified as Maurice Stokes and Amin
> Vicks)] were standing on Huntingdon Street in Philadelphia. The
> victim owed one of the three men $400.00. The group robbed the
> victim, emptying the victim's pockets, where they found, *inter
> alia*, $700.00 in cash. They then drove in the victim's car to an
> ATM machine and attempted to withdraw cash using the victim's
> bank card. Next, they drove to Chalmers Recreation Center,
> where they asked the victim to call his wife to determine if there
> was cash in their home, to which she responded in the negative.
> Thereafter, Saunders pistol-whipped the victim and the other two
> individuals searched the victim's car for valuables, at which point
> they found half an ounce of cocaine. The three men decided to
> leave, and the victim began to yell threats at the three men.
> Saunders then stated that "he wasn't getting shot no more,"

returned to the car and shot the victim twice.  The next morning, the group burned the victim's car, with him inside, to destroy the evidence.

*Commonwealth v. Saunders*, 297 A.3d 729 at *1  (Pa. Super. 2023) (non-precedential decision) (footnote omitted).

On March 8, 2013, a jury convicted Saunders of second-degree murder and related charges.  The trial court imposed a mandatory sentence of life in prison for the murder charge with all other sentences to run concurrently. Following the denial of his post-sentence motions, Saunders appealed.  On July 7, 2014, this Court affirmed Saunders' judgment of sentence and, on December 31, 2014, our Supreme Court denied his petition for allowance of appeal.  *Commonwealth v. Saunders*. 105 A.3d 783 (Pa. Super. 2014) (non-precedential decision), *appeal denied*, 106 A.3d 725 (Pa. 2014).

On February 23, 2015, Saunders filed a timely *pro se* PCRA petition and the court appointed counsel.  On October 29, 2015, PCRA counsel filed a *Turner*/*Finley* no-merit letter[1] and requested leave to withdraw.  On December 21, 2015, the court dismissed Saunders' *pro se* PCRA petition and granted counsel's motion to withdraw as counsel.  Saunders timely appealed, and, while that appeal was pending, he filed a second PCRA petition.  On April 26, the PCRA court dismissed this petition due to the pending appeal.

_____

[1] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On April 6, 2017, this Court vacated the order dismissing Saunders' first PCRA petition and remanded for the PCRA court to hold an evidentiary hearing on Saunder's claim that trial counsel was ineffective for failing to call an alibi witness. This Court also directed that new PCRA counsel be appointed, and, if counsel deemed it necessary, that counsel be permitted to file an amended petition. *See Commonwealth v. Saunders*, 169 A.3d 1140 (Pa. Super. 2017) (non-precedential decision).

After remand, the PCRA court appointed new PCRA counsel, who filed an amended petition. On March 28, 2018, the PCRA court held an evidentiary hearing regarding Sauder's ineffectiveness of trial counsel claim. Following the hearing, the PCRA court dismissed Saunders' amended petition. Saunders did not file an appeal to this Court.

Over the ensuing years, Saunders filed several unsuccessful PCRA petitions. On May 14, 2023, Saunders filed the *pro se* PCRA petition at issue, his fifth. On December 22, 2023, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Saunders' fifth petition without a hearing. According to this notice, although Saunders' petition was untimely, he sufficiently established a time-bar exception. Nonetheless, the court found that Saunders' claim was meritless. Saunders did not file a response. By order entered February 2, 2024, the PCRA court denied Saunders' petition. This appeal followed. Both Saunders and the PCRA court have complied with Pa.R.A.P. 1925.

Saunders raises the following two issues on appeal:

I.      Did the PCRA Court err in finding, without a hearing, that [Saunders'] constitutional rights under the Fifth and Fourteenth Amendments were not violated by the Commonwealth's failure to disclose [Detective] James Pitts' history of misconduct?

II.     Did the PCRA Court err in finding, without a hearing, that [Saunders'] constitutional rights under the Fourteenth Amendment were not violated by [Detective] James Pitts' use of unconstitutional interrogation methods in [Saunders'] case (with Amin Vicks and others) which were consistent with a newly identified unconstitutional pattern and practice of [Detective] Pitts?

Saunders' Brief at 7.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."  ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

We first consider whether the PCRA court correctly concluded that Saunders' fifth petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petitioner alleges and proves that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Saunders' judgment of sentence became final on March 31, 2015, ninety days after our Supreme Court denied his petition for allowance of appeal and the time for filing a writ of *certiorari* to the United States Supreme Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13. Therefore, Saunders had until March 30, 2016, to file a timely petition. Because Saunders filed his fifth petition in 2023, it is patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. ***See Hernandez***, ***supra***.

Saunders argues that the PCRA court erred "in finding no merit to two claims based on newly discovered evidence and governmental interference without a hearing." Saunders' Brief at 15. According to Saunders, the Commonwealth violated his constitutional rights when it "failed to disclose to the defense the significant history of misconduct committed by investigating Homicide Detective James Pitts." *Id.* Additionally, Saunders asserted that Detective Pitts "acted in this case with a newly identified unconstitutional interrogation pattern and practice." *Id.* at 15-16. We consider each timeliness exception separately.

In his first issue, Saunders argues he met the governmental interference exception to the PCRA's time bar because the Commonwealth committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Although a *Brady* violation might fall within the governmental interference exception to the PCRA's time bar, the PCRA statute nevertheless requires a petitioner to plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence. *Commonwealth v. Vinson*, 249 A.3d 1197. 1205 (Pa. Super. 2021).

Here, the PCRA court found that Saunders met the governmental interference exception to the PCRA's time bar:

> [Saunders] avers that the Commonwealth failed to disclose Pitts' history of misconduct until June 26, 2020, when he was mailed police misconduct disclosures regarding Pitts as well as other officers. [Saunders] states that, prior to the disclosure, he

- 6 -

did not have access to records showing Pitts' misconduct as they were not public record and not discoverable through a Right to Know Request. As a result, [this court] determined that [Saunders] satisfied the governmental interference exception and reached the merits of [Saunders'] **Brady** claim regarding evidence of Pitts' history of misconduct.

PCRA Court Opinion, 3/26/24, at 10-11 (citations and footnote omitted).[2] We agree that Saunders met this exception to the time bar.

The court next succinctly summarized the applicable law applicable to Saunders' substantive **Brady** claim:

Under **Brady v. Maryland**, 373 U.S. 83 (1963), exculpatory evidence not disclosed to the defense will give rise to a due process violation and will require a new trial if the exculpatory evidence is "material" either to guilt or punishment. 373 U.S. at 87; **see also** Pa.R.Crim.P. 573(B)(1)(a) (specifying, as mandatory discovery, "[a]ny evidence favorable to the accused that is material either to guilt or punishment, and is within the possession or control of the attorney for the Commonwealth"). If the police possess evidence that is favorable to the defense, then the Commonwealth is deemed to be responsible for its disclosure even if it is solely in the possession of the police." **See Commonwealth v. Lambert**, 887 A.2d 848, 854 (Pa. 2005).

Therefore, to establish a **Brady** violation, [a] defendant must demonstrate that: "(1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment." **Commonwealth v. Simpson**, 66 A.3d 253, 264 (Pa. 2013). In order to establish prejudice, [a] defendant "must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.[] A reasonable probability for these purposes is

_____

[2] Although Saunders did not file his fifth petition until 2023, the PCRA court found it could not be filed sooner due to a pending appeal from the dismissal of Saunders' fourth petition. **See** PCRA Court Opinion, 3/26/24, at 11 n.6 (citing **Commonwealth v. Lark**, 746 A.2d 585 (Pa. 2000)).

one which undermines confidence in the outcome of the trial." *Id.* (internal quotations and citations omitted). Moreover, "*Brady* evidence may not be cumulative of other evidence, cannot have been equally available to the defense, and cannot have been discoverable through the exercise of due diligence." *Id.* (internal citations omitted).

PCRA Court Opinion, 3/26/24, at 11-12.

Addressing the merits of Saunders' *Brady* claim, the PCRA court found none, given Detective Pitts' limited participation in the underlying police investigation of the crime and the trial testimony. The court explained:

> Here, evidence of Pitts' history of misconduct in unrelated cases is not material because there is not a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to [Saunders]. Pitts did not testify at [Saunders'] trial. Furthermore, Pitts only took the statement of one of the civilian witnesses who testified at trial, and none of the witnesses who testified at trial claimed they experienced any coercion at the hands of Pitts.
>
> Maurice Stokes, [one of Saunders' co-conspirators], testified to the entire criminal incident. Stokes' statements to police were referenced at trial. However, those statements were taken by Detectives Cummings and Glenn.
>
> Additionally, James Floyd, a friend of the [victim], testified that he saw [Saunders], Stokes, and a third man brandishing a gun, accost the [victim] on the day of the murder. Floyd gave a prior statement to police, which was referenced at trial. Pitts was one of the two detectives that took the statement, but Floyd's statement was substantially consistent with his in-court testimony. At trial, both the Commonwealth and defense questioned Floyd about his statement to police. Floyd never claimed that he was coerced.
>
> Patricia Johnson, the [victim's] wife, testified that she received a phone call from the [victim] on the night of the robbery and homicide. Johnson testified that, during the phone call, the [victim] asked her for money before she heard scuffling in the background and a voice say, "let him make other phone calls" and "you can't get any money from anybody." Johnson stated that

- 8 -

the call was disconnected, and when she tried to call the [victim] back the call was answered but she only heard scuffling and voices in the background. Johnson gave a statement to police, which was referenced at trial, but this statement was taken by Detectives Cummings and Glenn. No other civilian witnesses testified.

Thus, the record establishes that two of the civilian witnesses were not interviewed by Pitts, and the civilian witness that was interviewed by Pitts, Floyd, testified consistently with his statement. No civilian witness ever claimed to have been coerced. Accordingly, had the Commonwealth disclosed evidence of Pitts' misconduct in unrelated cases, it is not reasonably probable that there would have been a different result. No relief is due.

PCRA Court Opinion, 3/26/24, at 12-13 (citations and footnotes omitted).

Our review of the record supports the PCRA court's conclusion. Saunders' claims to the contrary are unavailing. Saunders spends the majority of his supporting argument on this issue extensively citing Pitts' actions in other cases but not his own. *See* Saunders' Brief at 18-25; 29-34. Moreover, when he does address a witness from his trial, he proffers no evidence to support his claim. For example, as noted by the PCRA court, Saunders claims that "Stokes was interrogated four separate times by [Detective] Pitts before he allegedly decided to become a cooperating witness and provide inculpatory evidence against" him. *See id.* at 12 n.7. Our review confirms the court's conclusion that the record only contains two statements given by Stokes, both of which were taken without Detective Pitts' participation.

Moreover, Saunders proffers no evidence, and our review of the record refutes, that Detective Pitts was "the lead investigator on this case and

arguably involved in most of if not all of the investigation." Saunders' Brief at 28. Finally, our review of the record refutes Saunders claim that, had the Commonwealth disclosed Detective Pitts' history of misconduct, "the jury could have found that [Detective] Pitts' testimony was incredible, or at the very least, unreliable and that as a result, the investigation as a whole was unreliable." Saunders' Brief at 34. However, Detective Pitts did not testify at Saunders' trial. Thus, Saunders' first issue fails.

In his second issue, Saunders asserts that Pitts' pattern and practice of unconstitutional interrogation tactics establishes the newly-discovered-fact exception to the PCRA's time bar. 42 Pa.C.S.A. § 9545(b)(1)(ii). He further contends that the Commonwealth's failure to disclose Pitts' pattern and practice prevented him from raising claims regarding the coercion he and Vicks allegedly experienced due to governmental interference.

This Court has explained the newly-discovered-fact exception to the PCRA's time bar as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

Here, the PCRA court found Saunders' "newly-discovered fact" claim to be untimely raised. We agree for the reasons stated by the PCRA court. *See* PCRA Court Opinion, 3/26/24, at 15-16 (explaining Saunders' would have known of Detective Pitts' coercion at the time it occurred, and that Saunders could have learned earlier of Detective Pitts coercion of Vicks since Saunders proffered Vicks as a witness to support his first PCRA petition). But even if timely, we further agree with the PCRA court that Saunders' substantive after-discovered evidence claim is meritless.

To review the PCRA court's determination, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

[W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been

- 11 -

> obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. **See**, **e.g.**, **Small**, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." **Commonwealth v. Padillas**, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Id.**

Applying the **Small** test to Saunders' claim, the PCRA court found it to lack merit. The court explained:

> Evidence of Pitts' pattern and practice of unconstitutional interrogation tactics would not likely compel a different result in [Saunders'] case. [Saunders] did not give a statement to police and neither [Saunders], nor Vicks, testified at trial. Additionally, compelling evidence of [Saunders'] guilt, which was unconnected to Pitts, was presented at trial. Thus, evidence if Pitts' pattern

- 12 -

and practice of unconstitutional tactics would not have likely compelled a different result. Accordingly, no relief is due.

PCRA Court Opinion, 3/26/24, at 16-17 (citations omitted). Our review of the record supports the PCRA court's conclusion.

Saunders' claims to the contrary are unavailing. He asserts that Detective Pitts used "in his case a 'pattern and practice' of unconstitutional interrogation methods in order to coerce [him] and Amin Vicks into making/adopting false statements inculpating [Saunders]." Saunders' Brief at 35. Saunders begins his supporting argument by providing a summary, without citation, describing Detective Pitts' "pattern and practice." **See** Saunder's Brief at 35-36.

He then proffers a verified statement Vicks prepared in response to a letter Vicks received from Saunder's PCRA counsel. **See id.**, at 37-38. The contents of this statement are consistent with Detective Pitts "pattern and practice," as Saunders puts forth in his brief. Even if true, however, Saunders does not establish how he was prejudiced. As noted by the PCRA court, Vicks did not testify at Saunders' trial.

Saunders also refers to his own July 2019 statement he made to the internal affairs division of the Philadelphia Police Department when the department was investigating Detective Pitts. In this statement, Saunders stated that although Detective Pitts was "very aggressive," the detective

"never got physical or anything like that." Saunders' Brief at 39.[3] Again, as noted by the PCRA court, Saunders did not give a statement to the police in his case or testify at his trial. Thus, because neither Vicks or Saunders gave a statement to Detective Pitts, nor testified at Saunders' trial, Saunders cannot establish prejudice.

In sum, because the PCRA court correctly concluded that evidence of Detective Pitts' history of misconduct in unrelated cases was not of such a nature and character that it would compel a different result here. *Padillas*, *supra*. Saunders did not meet the four-part test required for a new trial. *Small*, *supra*. Thus, the court correctly denied Saunders' claims without first holding an evidentiary hearing. *See*, *e.g.*, *Commonwealth v. Holmes*, 905 A.2d 507 (Pa. Super. 2006). We therefore affirm PCRA court's order denying him post-conviction relief.

Order affirmed.

---

[3] In this statement, Saunders also opined that Stokes was coerced by Detective Pitts into implicating Saunders. As we noted in addressing his first issue, Saunders proffers no evidence to support his claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2025